```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA

JACQUE JULIEN                                      CIVIL ACTION

V.                                                 NO. 15-557

EPL OIL & GAS, INC. AND
WOOD GROUP PSN, INC.                               SECTION "F"
```

                           ORDER AND REASONS

Before the Court is defendant Wood Group PSN, Inc's motion for summary judgment on the borrowed employee status of its employee, Alan Cook. For the following reasons, the motion is GRANTED.

                              **Background**

Jacque Julien was employed by United Fire & Safety, LLC when he worked aboard the South Pass Block 57 platform (SP-57B). EPL Oil & Gas, Inc. owned this SP-57B platform at the time of Julien's work aboard.

On April 7, 2014 Julien worked as a fire watch for hot work. He observed sparks and a piece of hot grating fall through the deck on which he was standing to the deck below. For safety purposes, Julien went to the lower deck in hopes of dousing the hot pieces of metal with water to prevent damage to nearby equipment. Fire hose Reel #10 was located on this deck and Julien intended to use Reel #10 to douse the hot pieces of metal that had fallen onto that deck. Julien turned on the water supply, grabbed the nozzle, and began walking while pulling the hose. However,

                                    1

after pulling the reel a few feet, the hose stopped properly unwinding; Julien turned around to assess the problem. As Julien turned around, the hose allegedly shot toward him and struck his left arm and knocked him to the deck.

Julien originally sued EPL to recover for the injuries he sustained.[1] Wood Group PSN, Inc. was added as a third party defendant because of its employee's alleged involvement. Wood Group's employee, Alan Cook, inspected Reel #10 on April 1, 2014 and found the reel to be in working order. Any potential liability that Wood Group could owe to Julien is based on Cook's alleged negligence in failing to determine Reel #10 was not in working order.

Wood Group now moves for summary judgment on the borrowed employee status of Alan Cook. Wood Group contends that Cook was EPL's borrowed employee because Cook was EPL's contract worker who followed all work-related orders from EPL employees.

II.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if

---

[1] EPL has since filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United State Bankruptcy Court, Southern District of Texas. All proceedings in this lawsuit against EPL are stayed pending proper motion of a party to reopen.

the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light

3

most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## III.

The borrowed employee doctrine provides that while a person is employed by one company, he "may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation[ship]." Standard Oil Co. v. Anderson, 212 U.S. 215, 220 (1909). When an employee is found to be a "borrowed employee," the borrowing employer is liable for the borrowed employee's acts. See Melancon v. Amoco Prod. Co., 834 F.2d 1238, 1234 (5th Cir. 1988). The Fifth Circuit considers nine factors to determine a person's borrowed employee status:

> (1) Who has control over the employee and the work he is performing? (2) Whose work is being performed? (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer? (4) Did the employee acquiesce in the new work situation? (5) Did the original employer terminate his relationship with the employee? (6) Who furnished tools and place for performance? (7) Was the new employment over a considerable length of time? (8) Who had the right to discharge the employee? (9) Who had the obligation to pay the employee?

4

Id. at 1244. The Court must consider and weigh all factors; however, the first factor, who controlled the employee, is a "central issue." Id.

(1) Who Controlled Cook

The Fifth Circuit has held that receiving work orders only from the borrowing employer's personnel satisfies this crucial factor. Id. at 1245. The record undisputedly indicates that EPL controlled Cook during his time on the SP-57B; EPL directed work that Cook was to perform as well as his work schedule. Cook only reported to EPL employees, who served as his supervisors, aboard the SP-57B. No Wood Group employee was aboard the platform to surpervise Cook and his contact with Wood Group was as little as once per quarter. EPL's exclusive control over Cook's work duties establishes his status as EPL's borrowed employee.

(2) Whose Work Did Cook Perform

Cook performed the work of EPL, not Wood Group. Wood Group supplies labor to oil companies, facility owners, and/or mineral lessees. Wood Group's employees aboard the SP-57B assisted EPL in its oil and gas production operations. Therefore, when Cook worked for EPL to assist in production activity, he performed the work of EPL and not Wood Group. The Fifth Circuit specifies that it is irrelevant that the borrowed employee's work was incidental to the borrowing employer's essential business. Id. Cook's inspection of

5

Reel #10 may have been incidental to EPL's primary business but it does not change the fact that he performed EPL's work.

(3)  Did Cook Agree or Understand the Employment Dynamic

Wood Group's Master Service Contract (MSC) with EPL does not affect Cook's status as a borrowed employee. The MSC attempts to hold Wood Group responsible for Cook's actions. However, where a borrowing employer controls the employee in all material aspects, the MSC will not serve to shield the borrowing employer from liability. See Crawford v. BP Corp. N. Am. Inc., Civil Action No. 13-445, 2015 WL 1190123, at *2-3 (E.D. La. Mar. 16, 2015). Because EPL controlled the type of work Cook performed and when he performed it, EPL controlled Cook in all material aspects. Therefore, the MSC does not effectively shield EPL from liability.

(4)  Did Cook Acquiesce in the Work Situation

Cook was undeniably aware of the work arrangement with EPL. The focus of this factor "is whether the employee was aware of his work conditions and chose to continue working in them." Fairley v. Murphy Expl. & Prod. Co., 58 F. Supp. 3d 641, 644 (E.D. La. 2014). Cook knowingly performed work on EPL's platform, followed directions from its employees, and never complained about the work relationship to Wood Group. Accordingly, this factor weighs in favor of Cook's borrowed employee status.

(5)  Did Wood Group Terminate Cook

Wood Group essentially relinquished control of Cook while he worked on EPL's platform. "'The emphasis when considering this factor should focus on the lending employer's relationship while the borrowing occurs.'" Id. (quoting Melancon, 834 F.2d at 1244). Here, the record indicates that Cook rarely had interaction with fellow Wood Group employees and personnel. He spoke to Wood Group employees quarterly, mainly for information regarding uniforms and other non-work specific issues. Though Wood Group did continue to issue Cook's paycheck, it did so only after EPL approved Cook's hours and gave clearance for Wood Group to issue the check. Wood Group, thus, relinquished control over Cook.

(6)  Who Furnished Cook's Tools and Workplace

EPL undisputedly furnished Cook's tools, transportation to and from the platform, lodging, and work materials. The record indicates EPL provided everything Cook needed while aboard the SP-57B, which supports finding Cook is EPL's borrowed employee.

(7)  Was Cook Employed with EPL for Considerable Time

Cook worked for EPL a considerable length of time. Employees have qualified for borrowed employee status after working for a borrowing employer for as little as one day. Capps v. N.L. Barold-NL Indus., Inc., 784 F.2d 612, 618 (5th Cir. 1986). Here, Cook worked for EPL aboard the SP-57B for eight months. His employment qualifies as a considerable length of time, suggesting he is a borrowed employee.

7

(8)   Who Had Authority to Discharge Cook

The record indicates that EPL had the authority to discharge workers from their duties aboard the SP-57B. This Court held in Fairley v. Murphy Exploration & Production Co. that the borrowing employer need not have the authority to terminate the borrowed employee from its direct employer to satisfy this factor. Fairley, 58 F. Supp. 3d at 645. It is thus sufficient that EPL could terminate Cook from his work with EPL but not terminate Cook from Wood Group.

(9)   Who Had the Obligation to Pay Cook

Finally, that Wood Group issued Cook's paycheck does not defeat Cook's status as EPL's borrowed worker. Cook's wages were based on hours he worked for EPL, and EPL had to approve the hours before Wood Group paid Cook. The record indicates Wood Group only paid Cook for hours worked for EPL, and further, that Wood Group invoiced EPL for the exact amount of time Wood Group's employees, including Cook, worked for EPL. This arrangement supports Cook's borrowed employee status. See id.

Despite the MSC providing that Wood Group remained liable for Cook's actions as his employer, this Court finds that there are no genuine issues of material fact as to the borrowed status of Mr. Cook. Accordingly, the motion for summary judgment is GRANTED.

8

New Orleans, Louisiana, September 14, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

9